UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOTAL MARKETING TECHNOLOGIES,
INC. d/b/a AIR AMBULANCE
NETWORK,

    Plaintiff/
    Counterclaim-Defendant,

v.                    Case No.  8:10-cv-2680-T-33TBM

ANGEL MEDFLIGHT WORLDWIDE AIR
AMBULANCE SERVICES, LLC, and
ANGEL JET SERVICES, LLC,

    Defendants/
    Counterclaim-Plaintiff.
_____/

ANGEL JET SERVICES, LLC,

    Third-Party Plaintiff,

v.

TERRI PEAT, individually,

    Third-Party Defendant.
_____/

## ORDER

    This matter comes before the Court pursuant to Total
Marketing Technologies, Inc. d/b/a Air Ambulance Network and
Terri Peat's Motion for Summary Judgment Regarding Angel Jet
Services, LLC's Amended Counterclaim and Third-Party Complaint
(Doc. # 76), filed on May 14, 2012.[1] Counterclaim-
Plaintiff/Third-Party Plaintiff Angel Jet Services, LLC filed

_____

    [1] The Court will refer to the Plaintiff/Counterclaim-
Defendant as Air Ambulance.

its response in opposition under seal on June 1, 2012.[2] (Doc. # S-9). Air Ambulance and Ms. Peat filed a reply, with leave of Court, on June 14, 2012. (Doc. # 93).

Also before this Court is Defendants' Motion for Summary Judgment on Plaintiff's Amended Complaint (Doc. # 80), filed on May 14, 2012. Air Ambulance filed a response in opposition (Doc. # 84) on May 31, 2012. Angel Jet filed a Reply, with leave of Court, on June 18, 2012.[3] (Doc. # 94).

For the reasons that follow, the Court denies both Motions.

## I.  **Background**

Air Ambulance and Angel Jet are providers of air ambulance and commercial medical transport services. These services include working with hospitals and medical staff,

---

[2] Numerous documents were filed under seal because they contain confidential patient information. In the documents that were filed publicly, the parties refer to patients by their initials. The Court will do so as well.

[3] The original complaint named Angel MedFlight Worldwide Air Ambulance Services, LLC as a defendant. Angel Jet contends that this entity never operated Angel MedFlight and that the proper entity is Angel Jet Services, LLC. Air Ambulance asserts that the corporate structure and relationship between these entities remains unclear. The Amended Complaint (Doc. # 23) added Angel Jet as a party rather than substituting Angel Jet for Angel MedFlight. Thus, Angel MedFlight remains a party to this action, although only Angel Jet filed the Motion. The Court will refer to the Defendants as Angel Jet.

arranging air and ground transportation, and handling paperwork. Air Ambulance does not own any aircraft and thus outsources the air transport component to other providers. Angel Jet owns five aircraft but does not always use its own aircraft and medical crew to transport patients.

This dispute arises from an alleged oral agreement between Air Ambulance and Angel Jet under which Angel Jet would perform insurance billing services on behalf of Air Ambulance in exchange for a portion of the insurance proceeds. In late 2008, Angel Jet employee Michael Peat (Third-Party Defendant Terri Peat's exhusband) contacted Kirk Pacheco, president of Air Ambulance. (Doc. # 76 at 2). Mr. Peat advised Mr. Pacheco that Angel Jet had insurance billing expertise and introduced Mr. Pacheco to Angel Jet founder Jeremy Freer; they discussed Angel Jet's ability to pursue insurance reimbursement. (Id.)

Air Ambulance sent patients to Angel Jet for insurance billing purposes from December 2008 through February 2009. (Id. at 5). During this period, Angel Jet processed insurance claims for seven Air Ambulance patients and received $1,228,189.85 in insurance reimbursement proceeds. (Id.) Air Ambulance alleges that it is entitled to 50% of those proceeds, which Angel Jet failed to remit. Air Ambulance

initiated this action on December 1, 2010, and filed its Amended Complaint on August 1, 2011, asserting claims for breach of oral contract and quantum meruit. (Doc. # 23).

Angel Jet filed its Counterclaim and Third Party Complaint (Doc. # 25) against Air Ambulance and Ms. Peat on August 10, 2011. Angel Jet alleges that Ms. Peat, who worked for Angel Jet from November 2008 through April 2009, diverted calls from Angel Jet's existing and prospective customers to Air Ambulance, and further provided "protected, confidential information, including but not limited to, Angel Jet's forms" to Air Ambulance. (Id. at ¶ 23).

Angel Jet asserts claims for tortious interference with prospective business relationships and conversion against Air Ambulance and Ms. Peat, breach of duty of loyalty against Ms. Peat, and copyright infringement against Air Ambulance. On January 6, 2012, this Court dismissed the copyright infringement claim without prejudice and with leave to amend. (Doc. # 39).

Angel Jet filed its Amended Counterclaim and Third Party Complaint (Doc. # 41) on January 20, 2012, asserting the same four claims. Among the Exhibits is Angel Jet's January 20, 2012, application for copyright protection for its "Angel Jet Services Client Contract." (Doc. # 41-5).

## II. **Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. <u>See</u> <u>Porter v. Ray</u>, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>See</u> <u>id</u>. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories and admissions

on file, designate specific facts showing there is a genuine issue for trial. <u>See</u> <u>id</u>.

## III. <u>Air Ambulance/Peat's Motion for Summary Judgment</u>

Air Ambulance and Ms. Peat move for summary judgment as to each count of the Amended Counterclaim and Third Party Complaint and partial summary judgment as to damages. They assert that there is no record evidence supporting Angel Jet's claims for tortious interference, conversion and breach of duty of loyalty. They further argue that the Angel Jet Services Client Contract is not copyrightable. In any event, Air Ambulance contends that it did not infringe on any copyright because it had permission to use the contract form. Finally, Air Ambulance and Ms. Peat argue that Angel Jet has failed to provide any evidence of damages.

### A.   <u>Tortious Interference</u>

In Count I of the Amended Counterclaim and Third Party Complaint, Angel Jet alleges that Ms. Peat, "a soon-to-be disgruntled employee," interfered with Angel Jet's existing and prospective business relationships with an intent to harm Angel Jet and benefit her new employer, Air Ambulance. (Doc. # 41 at ¶ 30). Angel Jet alleges that Air Ambulance and Ms. Peat "worked in concert" to divert calls from Angel Jet's

existing and prospective customers to Air Ambulance. (<u>Id.</u> at
¶ 32).

"Tortious interference with a business relationship
requires a plaintiff to allege (1) the existence of a business
relationship, (2) knowledge of the relationship on the part of
the defendant, (3) an intentional and unjustified interference
with the relationship, and (4) damage to the plaintiff as a
result of the relationship." <u>Cherry v. D.B. Zwirn Special
Opportunities Fund</u>, No. 8:09-cv-33-T-33EAJ, 2010 WL 415313, at
*8 (M.D. Fla. Jan. 27, 2010). "The Eleventh Circuit has stated
that '[a] business relationship need not be evidenced by a
contract, but it generally requires an understanding between
the parties that would have been completed had the defendant
not interfered.'" <u>E-Z Pack Mfg., LLC v. RDK Truck Sales &
Servs., Inc.</u>, No. 8:10-cv-1870-T-27AEP, 2011 WL 4343790, at
*10 (M.D. Fla. Aug. 10, 2011) (quoting <u>Int'l Sales & Serv.,
Inc. v. Austral Insulated Prods., Inc.</u>, 262 F.3d 1152, 1154
(11th Cir. 2001)). Furthermore, a plaintiff must allege a
business relationship with "identifiable customers" versus the
"community at large." <u>Id.</u> at *8.

Air Ambulance and Ms. Peat argue that Angel Jet has
identified only one patient it believes was wrongfully
diverted -- L.J. However, Air Ambulance asserts that L.J.'s

brother called Air Ambulance directly to request a quote. (Doc. # 85, Pacheco Aff. at ¶ 17). Ms. Peat states that she did not receive a call from L.J. when she worked at Angel Jet and did not direct him to Air Ambulance. (Doc. # 78, Terri Peat Aff. at ¶¶ 7-8).

Air Ambulance further contends that Angel Jet has not produced any evidence demonstrating that L.J. ever contacted Angel Jet. Air Ambulance states that the only evidence Angel Jet has produced regarding L.J. is a copy of a letter of medical necessity saved on Mr. Peat's computer. Although Angel Jet has produced metadata from the letter indicating that it was last modified by "Terri," Angel Jet's computer forensic expert agreed that the metadata does not prove who saved the document. (Doc. # S-8, Connor Dep. at 20).

Finally, Air Ambulance argues that there is no evidence of an actual and identifiable understanding between L.J. and Angel Jet that would likely have been completed had Ms. Peat and/or Air Ambulance not interfered. Because patients often call multiple air ambulance companies to obtain quotes, Air Ambulance argues that Angel Jet cannot establish the existence of a business relationship, even if it were able to prove L.J. contacted Angel Jet.

Angel Jet asserts that it is unable to provide direct evidence in support of its claims due to Air Ambulance's failure to timely produce documents. Nonetheless, Angel Jet states that it can demonstrate through circumstantial evidence factual issues that preclude summary judgment.[4] Angel Jet's 30(b)(6) witness testified that L.J. called Angel Jet during Ms. Peat's employment with Angel Jet, that a letter of medical necessity for L.J. was found on Ms. Peat's private computer, not on Angel Jet's systems, and that Air Ambulance performed services for L.J. (Doc. # S-3, LoCascio Dep. at 174).

Furthermore, Mr. Peat states that he was present in February and March 2009 when Ms. Peat had phone conversations with Air Ambulance executives related to flights for patients who had contacted Angel Jet. (Doc. # S-9, Ex. A, Michael Peat Decl. at ¶ 10). Mr. Peat further states that he saw Ms. Peat access an Angel Jet email account -- an account through which customer leads would be routed -- after her termination. (Id.). Air Ambulance contends that Mr. Peat does not identify

---

[4] Angel Jet's evidence includes inadmissable hearsay that this Court did not consider. See Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (explaining that, as a general rule, "inadmissible hearsay cannot be considered on a motion for summary judgment" and that affidavits and deposition testimony must be based upon personal knowledge and set forth facts that would be admissible in evidence) (internal quotations and citations omitted).

any particular patients who were diverted; however, Mr. Peat's declaration creates an inference that the patients are identifiable, as opposed to the community at large.

Drawing all inferences from the evidence in the light most favorable to Angel Jet, as the nonmoving party, the Court finds that there are genuine issues of material fact as to the alleged diversion of patients from Angel Jet to Air Ambulance. The Court therefore denies summary judgment as to Angel Jet's tortious interference claim.

### B.  Conversion

Count II of the Amended Counterclaim and Third-Party Complaint asserts a claim for conversion of confidential business information. Angel Jet alleges that Air Ambulance received, through Ms. Peat, confidential business information in the form of the diverted calls and certain confidential documents. Angel Jet asserts that it had exclusive right to possession of the confidential information but Air Ambulance has used the information for its own purposes.

"Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein," and a claim for conversion can lie "even if the specific property 'converted' has no actual value." Warshall v. Price, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) (internal

quotations and citations omitted). A claim for conversion may extend to the wrongful taking of intangible business interests. <u>In re Corbin's Estate</u>, 391 So. 2d 731, 732 (Fla. 3d DCA 1980). Furthermore, "[i]t is not necessary for a person to deprive another of *exclusive possession* of their property in order to be liable for conversion." <u>Warshall</u>, 629 So. 2d at 904 (emphasis in original).

Air Ambulance and Ms. Peat again argue that Angel Jet cannot support its claim that L.J. was diverted. They also assert that the allegedly confidential documents -- the Angel Jet contracts and letters of medical necessity -- were provided to Air Ambulance by Angel Jet employees. In particular, Air Ambulance contends that Freer not only gave Air Ambulance permission to use the Angel Jet Contract but required that Air Ambulance use the Angel Jet Contract for all flights for which Angel Jet provided billing services.

As discussed above, the Court finds facts in dispute related to the diversion of patients from Angel Jet to Air Ambulance. Furthermore, Angel Jet has proffered evidence that the documents provided to Air Ambulance were to be used only to facilitate billing and collections from insurance companies. (Doc. # S-7, Terri Peat Dep. at 128; Doc. # S-9, Ex. B., Freer Decl. at ¶¶ 6-7). Although Air Ambulance claims

11

Angel Jet never informed it that the documents were proprietary, Angel Jet offers testimony to the contrary. (Doc. # S-9, Ex. B., Freer Decl. at ¶ 7). Drawing all inferences from the evidence in the light most favorable to Angel Jet, as nonmovant, the Court finds that genuine issues of material fact preclude summary judgment on the conversion claim.

### C.  **Breach of Duty of Loyalty**

Angel Jet alleges that Ms. Peat engaged in disloyal acts while employed by Angel Jet to benefit her future employer, Air Ambulance. The disloyal acts consisted of diverting calls and downloading Angel Jet's forms and confidential business information. Angel Jet argues that Ms. Peat signed documents with confidentiality provisions and was aware of company policy prohibiting the disclosure of confidential business information.[5] (Doc. # 25-1, 25-2, 25-3).

An employee owes a duty of loyalty to her employer and should not use her employer's confidential information or solicit customers prior to the end of her employment. <u>Charles Schwab & Co., Inc. v. McMurry</u>, No. 2:08-cv-534-FtM-29SPC, 2008 WL 5381922, at *1 (M.D. Fla. Dec. 23, 2008). Thus, the diversion of calls and the storage of confidential documents

---

[5] Ms. Peat signed these documents on March 23, 2009.

on Ms. Peat's personal computer, if proven, would support Angel Jet's claim for breach of loyalty. As discussed above, the Court finds that there are facts in dispute related to this alleged misconduct. The Court therefore denies summary judgment as to the breach of duty of loyalty claim.

   **D.   <u>Copyright Infringement</u>**

   Angel Jet alleges that at least one of the documents Ms. Peat obtained is an "original, copyrightable work of authorship, which is currently pending registration with the United States Copyright Office, specifically pursuant to filing ID number 1-713553991." (Doc. # 41 at ¶ 48). Angel Jet alleges that Air Ambulance has been using the Angel Jet Contract without Angel Jet's permission, consent or license.

   To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Baby Buddies, Inc. v. Toys R Us, Inc.</u>, 611 F.3d 1308, 1315 (11th Cir. 2010) (internal quotations and citation omitted). Air Ambulance argues that it is entitled to summary judgment as to Angel Jet's copyright infringement claim because the Angel Jet Contract is not copyrightable and Air Ambulance did not infringe on any copyright.

Angel Jet obtained a certificate of copyright registration in January 2012. "A certificate of registration from the United States Copyright Office . . . is prima facie evidence of the copyrightability of a work; however, where other evidence in the record casts doubt on the question, validity will not be assumed." Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC, 596 F.3d 1313, 1319 (11th Cir. 2010) (internal quotations and citations omitted). Air Ambulance argues that the Angel Jet Contract is not copyrightable because it is a blank form that does not convey information. "It is well-established that blank forms which do not convey information or contain original pictorial expression are not copyrightable." Id. at 1320 (internal quotations and citation omitted).

Having examined the Angel Jet Contract, the Court is not convinced that it is a "blank form." The Eleventh Circuit, quoting Copyright Office regulations, describes blank forms as "time cards, graph paper, account books, diaries, bank checks, score cards, address books, report forms, order forms and the like, which are designed for recording information." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983) (quoting 37 C.F.R. § 202.1). The Angel Jet Contract, as the name implies, is more akin to a contract than

a blank form. The Angel Jet Contract includes a Credit Card Authorization Form that, in itself, would constitute a blank form. However, the bulk of the Angel Jet Contract conveys information regarding the relationship between the patient and Angel Jet, billing procedures, financial responsibility and the like. The Court finds nothing in the copyright regulations precluding copyright of a contract.

Air Ambulance argues that the Angel Jet Contract is not copyrightable because it is not original and that the copyright registration is invalid because it contains material misstatements as to originality. "However, even a purely factual compilation is copyrightable when it involves: (1) the assembly of pre-existing material, factors, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorization." <u>Thornton v. J Jargon Co.</u>, 580 F. Supp. 2d 1261, 1272 (M.D. Fla. 2008) (internal quotations and citation omitted).

It is true that "the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever," <u>id.</u> (internal quotations and citation omitted), and Air Ambulance suggests that the arrangement of various

boilerplate contract provisions is not sufficiently original to warrant a copyright. On the other hand, Angel Jet has proffered testimony that the Angel Jet Contract is an original work drafted by Freer. (Doc. # S-3, LoCascio Dep. at 157, 160). Based on the present record and the foregoing analysis, the Court finds that Angel Jet has adequately demonstrated ownership of a valid copyright.

Air Ambulance contends that it did not violate any copyright because it had permission to use the confidential documents. As discussed above, however, there are facts in dispute as to the extent of Air Ambulance's permission to use the documents. The Court therefore denies summary judgment as to the copyright claim.

### E.   Damages

Air Ambulance and Ms. Peat argue that they are entitled to partial summary judgment on the issue of damages because Angel Jet cannot establish that it has suffered any damages as a result of their alleged conduct. They argue that Angel Jet has merely speculated as to how much revenue Air Ambulance may have received from services performed for L.J. Angel Jet has also claimed that it is entitled to actual damages and disgorgement of profits received by Air Ambulance as a result of its use of Angel Jet's confidential business information.

16

However, Air Ambulance contends that Angel Jet cannot prove a causal connection between the alleged infringement and damages. Finally, Air Ambulance argues that Angel Jet cannot demonstrate actual damages.

A plaintiff "need not show the precise amount of damages so long as the trier of fact can arrive at an intelligent estimate without speculation or conjecture." <u>Royal Typewriter Co. v. Xerographic Supplies Corp.</u>, 719 F.2d 1092, 1105 (Fla. 1983). In this case, Angel Jet has offered some evidence as to its estimation of damages. Mr. Peat testified that Air Ambulance received at least $300,000 in insurance proceeds for the services it performed for L.J. (Doc. # S-9, Ex. A, Michael Peat Decl. at ¶ 12). In addition, Angel Jet bases its lost profits related to the use of its confidential documents upon its average billing for insurance flights. It is not the province of this Court, on a motion for summary judgment, to weigh the credibility of this evidence. The Court finds that Angel Jet has raised genuine issues of fact that preclude partial summary judgment as to damages.

## IV.  <u>Angel Jet's Motion for Summary Judgment</u>

Angel Jet asserts that it is entitled to summary judgment as to Air Ambulance's claims for breach of oral contract on the basis that no material terms were ever agreed upon that

would establish a valid oral agreement. Angel Jet moves for judgment as a matter of law as to Air Ambulance's quantum meruit claims because legal assignments of benefits entitle Angel Jet to retain any insurance proceeds. Finally, Angel Jet argues that payment to Air Ambulance under either theory would be void as against public policy and Florida law.

A.    **Breach of Oral Contract**

Air Ambulance alleges that it and Angel Jet entered into an oral contract whereby Air Ambulance agreed to assign to Angel Jet its right to insurance reimbursement and required patients to sign agreements allowing Angel Jet to seek insurance reimbursement. Angel Jet agreed to apply for insurance reimbursement and remit 50% of the proceeds to Air Ambulance. Air Ambulance alleges that Angel Jet breached the contract by failing to remit to Air Ambulance 50% of the insurance proceeds, resulting in at least $986,000 in damages.[6]

A breach of contract claim must establish "(1) the existence of a contract; (2) a material breach of that

---

[6] The Amended Complaint valued the insurance reimbursement Angel Jet received at approximately $1,900,000. (Doc. #23 at ¶ 16). Air Ambulance's Motion for Summary Judgment asserts that Angel Jet has received $1,228,189.85 in insurance proceeds from claims submitted on behalf of Air Ambulance's patients. (Doc. # 76 at 5).

contract; and (3) damages resulting from the breach." <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1272 (11th Cir. 2009). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." <u>Id.</u> In this diversity action, the Court must look to Florida law, which requires courts to apply an objective test in determining whether an enforceable contract exists. <u>Miles v. Nw. Mut. Life Ins. Co.</u>, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009). "If a purported agreement leaves open its essential terms for future negotiation, or merely constitutes an agreement to agree, then there is no enforceable contract." <u>Id.</u>

Angel Jet contends that no oral contract existed because the parties had not reached an agreement, citing as support an email exchange between Pacheco and Freer. On March 28, 2009, Pacheco wrote to Freer, "I have no idea what you have in mind and I would like to work something out between us . . . ." (Doc. # 80-3 at 4). In the last email in the exchange, dated March 31, 2009, Pacheco wrote, "Just think what we could accomplish working together . . . ." (<u>Id.</u> at 1). Angel Jet contends that this email exchange contains the first mention of a fee-sharing arrangement, and demonstrates that the parties intended for any agreement to be reduced to writing.

In a March 18, 2009, email exchange, Freer advised Pacheco of a $7,500 electronic payment for an Air Ambulance invoice. (Doc. # 80-4 at 1). Pacheco responded by thanking Freer for keeping his word. (Id.). Angel Jet presumes that this statement was made "to make sure Air Ambulance was paid the usual and customary charges for the services it actual [sic] provided." (Doc. # 80 at 12). Angel Jet argues that these exchanges confirm that the parties had not reached a meeting of the minds concerning any essential terms of a billing services arrangement. Angel Jet concludes that the only legal relationship "consistent with the Legal Assignments of Benefits would be that of a referral relationship pursuant to which any incentive remuneration would be illegal."[7] (Id. at 13).

Air Ambulance notes that the March 28, 2009, email expressed Pacheco's desire to work something out "so there is a process in place for all the other claims" (Doc. # 80-3 at 4) and contends that this email relates to the logistics of refunding a particular patient's retainer. (Doc. # 85, Pacheco Aff. at ¶ 7). Air Ambulance further asserts that the emails establish that the parties "agreed to split the claims." (Doc.

---

[7] The Court discusses the alleged illegality of the arrangement below.

20

# 80-3 at 2). Pacheco explains that his email proposing terms other than a 50/50 split of the insurance proceeds (Doc. # 80-3 at 3) was sent because Angel Jet "had not yet paid pursuant to [the] contract, and I was attempting to reach a resolution to allow Air Ambulance to be paid." (Doc. # 85, Pacheco Aff. at ¶ 8).

The Court has studied the emails at length, and finds that Air Ambulance has offered an explanation sufficiently plausible for a jury to find in its favor. Drawing all inferences from the evidence in the light most favorable to Air Ambulance, as the nonmoving party, the Court finds that there are genuine issues of material fact regarding the existence and terms of the alleged oral contract. The Court therefore denies summary judgment as to Air Ambulance's breach of contract claims.

### B.    <u>Quantum Meruit</u>

Air Ambulance alleges that it conferred a benefit on Angel Jet by assigning to Angel Jet the right to seek reimbursement for services that Air Ambulance performed. Air Ambulance asserts that Angel Jet knowingly accepted and retained that benefit and obtained insurance reimbursement for services Air Ambulance performed. Air Ambulance argues that it had a reasonable expectation of being paid and that allowing

Angel Jet to retain the insurance reimbursements without paying fair value would be inequitable. Air Ambulance asserts its quantum meruit claims in the alternative, should the alleged oral contract be deemed invalid.

To prevail on its claim for quantum meruit, Air Ambulance must demonstrate that (a) it conferred a benefit upon Angel Jet; (2) Angel Jet either requested the benefit or knowingly and voluntarily accepted it; and (3) under the present circumstances it would be inequitable for Angel Jet to retain the benefit. Eller Media Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 355 F. App'x 340, 341-42 (11th Cir. 2009). The Eleventh Circuit has explained that "the remedy of quantum meruit derives from contracts 'implied in fact.' In these contracts the parties have in fact entered into an agreement but without sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 806 (11th Cir. 1999) (internal quotations and citation omitted). In addition, "a claim for quantum meruit requires that plaintiffs demonstrate an expectation of compensation." Id.

Angel Jet asserts that the at-issue patients assigned the right to seek and retain insurance proceeds to Angel Jet via

Legal Assignments of Benefits. Thus the patients, not Air Ambulance, conferred benefits on Angel Jet. Angel Jet further argues that Air Ambulance cannot prove it is inequitable for Angel Jet to retain the insurance proceeds, less payments to Air Ambulance pursuant to its standard invoices, "since that was the arrangement between the parties." (Doc. # 80 at 15). Angel Jet states that Air Ambulance had the opportunity to review the Legal Assignments of Benefits before they were executed by the at-issue patients, and that Janie Watson, vice president and treasurer of Air Ambulance, understood that the Legal Assignments of Benefits enabled Angel Jet to "step into the shoes of the patient." (Id. at 16).

Absent from these arguments is an indication as to why Air Ambulance would permit all insurance benefits to be assigned to Angel Jet. Although the parties disagree as to who performed what services, nothing in the record suggests that Angel Jet performed all air ambulance and related services for all of the at-issue patients.

Angel Jet argues that in the cases of "S.C., E.S., and E.G., Air Ambulance did nothing more than connect the patients to Angel [Jet] who thereafter arranged and provided the services." (Id. at ¶ 24). Air Ambulance disputes this assertion, arguing that Air Ambulance coordinated services for

those patients and contracted separately with Angel Jet for air transportation; in the case of S.C., another provider ultimately performed the flight and Air Ambulance paid separately for that service. (Doc. # 86, Watson Aff. at ¶¶ 5-11). Air Ambulance asserts that Angel Jet performed no services other than insurance billing for five of the at-issue patients. (Id. at ¶ 12).

Air Ambulance argues that the Legal Assignments of Benefits establish the relationship between the patients and Angel Jet, not the relationship between Air Ambulance and Angel Jet. Air Ambulance has proffered testimony that the Legal Assignments of Benefits were executed to facilitate the insurance billing arrangement and that Air Ambulance expected to receive 50% of the insurance proceeds as part of that arrangement. (Doc. # 85, Pacheco Aff. at ¶¶ 4-7). Drawing all inferences from the evidence in the light most favorable to Air Ambulance, as nonmovant, the Court finds that genuine issues of material fact preclude summary judgment on the quantum meruit claim.

Angel Jet argues that the insurance proceeds it collected are commensurate with its usual and customary insurance reimbursement rates, and that Watson testified that Air Ambulance's typical profit for a brokering arrangement was

approximately $3,000. (Doc. # 80 at ¶ 16). Angel Jet further asserts that "Air Ambulance currently employs the exact same arrangement it now seeks to ask this Court to find inequitable" because Air Ambulance retains insurance proceeds for an entire brokering arrangement even if other providers perform some of the services. (Doc. # 80 at 16). Thus, Angel Jet asks this Court to deny Air Ambulance's equitable relief on the doctrine of unclean hands.

Air Ambulance asserts that the $3,000 profit figure does not accurately reflect Watson's testimony and, in any event, these arguments are irrelevant. The Court agrees. The Court fails to see how the rate Angel Jet bills insurance companies for services provided to its own patients has any bearing on its relationship with Air Ambulance. Air Ambulance has proffered expert testimony that the typical fee for insurance billing is 3% to 7% of the insurance proceeds. (Doc. # 87-1, Marasco Dep. at 101). Similarly, the fact that Air Ambulance retains insurance proceeds for services provided to its own patients, after paying third-party providers their agreed rate, says nothing about its alleged billing arrangement with Angel Jet. The Court therefore denies summary judgment on those grounds.

## C.   <u>Applicability of Florida Law Prohibiting</u>
<u>Fee-Splitting Agreements</u>

Angel Jet argues that Air Ambulance cannot recover under
either a breach of contract or quantum meruit theory because
such recovery is void as against public policy and would be
tantamount to an illegal patient-brokering contract. Florida
law prohibits "any split-fee arrangement, in any form
whatsoever, in return for referring patients or patronage to
or from a health care provider or health care facility." Fla.
Stat. § 817.505. Angel Jet asserts, citing to Watson's
testimony, that the basis of the relationship between the
parties was to provide an incentive for the referral of
private-pay insurance patients to Air Ambulance. Angel Jet
argues that such an agreement would be illegal whether it is
described as a billing arrangement or referral arrangement.[8]

Air Ambulance counters that Watson did not testify that
payment of a portion of the insurance proceeds was predicated
on patient referrals. Instead, she testified that Angel Jet
would retain 50% of the insurance proceeds as compensation for
its billing services. (Doc. # S-5, Watson Dep. at 145-46). She

---

[8] Angel Jet also cites Fla. Stat. § 458.331 as a basis
for this argument. However, the Court agrees with Air
Ambulance that § 458.331 applies only to disciplinary actions
against physicians and as such is inapplicable here.

26

further testified that while there may have been mention of patient referrals to Air Ambulance, there was no discussion of any compensation to Angel Jet in that regard. (<u>Id.</u> at 148). In any event, Angel Jet did not refer any patients to Air Ambulance. (<u>Id.</u>).

Drawing all inferences from the evidence in the light most favorable to Air Ambulance, as nonmovant, and resolving all doubts against Angel Jet, as movant, the Court declines to find, at this juncture, that the parties' billing arrangement is void as against the law and public policy. Whether the agreement between the parties contemplated compensation for referrals -- a fact in dispute -- would have a direct bearing on the applicability of the statute.

Furthermore, even if the parties did discuss referrals, such discussion would not necessarily void the entire arrangement. The court in <u>Gold, Vann & White, P.A. v. Friedenstab</u>, 831 So. 2d 692, 695-96 (Fla. 4th DCA 2002), found that provisions of an agreement constituting illegal fee-splitting might be severable if they did not go to the essence of the contract and if valid legal promises would remain absent the illegal portions. Given that the exact nature of the arrangement between the parties is disputed, the Court finds that genuine issues of material fact preclude summary

judgment on the ground that Air Ambulance's claims are void as against the law and public policy.

The Court does not, by this holding, address whether Angel Jet has waived the affirmative defense of illegality. Air Ambulance argues that Angel Jet did not plead illegality in its Answer and Affirmative Defenses (Doc. # 27), filed on August 23, 2011, and therefore waived that defense. Angel Jet asserts that it made Air Ambulance aware of its reliance on this defense in May 2011. Air Ambulance disputes that allegation. Air Ambulance argues that Angel Jet did not raise the illegality defense until March 2012, and Air Ambulance would be prejudiced if Angel Jet is allowed to raise this defense at this stage of the litigation.

Given the limited briefing on this issue, the Court declines to find, at this juncture, that Angel Jet has waived the illegality defense. Air Ambulance may raise this issue by appropriate motion as this matter proceeds to trial.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    Total Marketing Technologies, Inc. d/b/a Air Ambulance Network and Terri Peat's Motion for Summary Judgment Regarding Angel Jet Services, LLC's Amended Counterclaim and Third-Party Complaint (Doc. # 76) is **DENIED.**

(2) Defendants' Motion for Summary Judgment on Plaintiff's Amended Complaint (Doc. # 80) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>16th</u> day of July, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record